**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nikki A. Allen,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-21-08241-PCT-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Nikki A. Allen's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security disability benefits. (Doc. 1.) The appeal is fully briefed (Docs. 14, 17, 18), and the Court now rules.

**I.    BACKGROUND**

    **A.    Factual Overview**

On her alleged onset date, Plaintiff was 31 years old. (Doc. 13-7 at 306.) She has one year of college, vocational school training in phlebotomy, and past relevant work as a phlebotomist. (Doc. 13-3 at 33; Doc. 13-7 at 200.) Plaintiff filed her social security disability claim on May 22, 2018, alleging disabilities beginning on November 14, 2017, including multiple sclerosis, peripheral neuropathy, inflammatory bowel disease, breast cancer gene 1 positive ("BRCA 1 positive"), and vestibular system disorder. (Doc. 13-3 at 24, 27.) Her claim was initially denied on January 2, 2019, and upon reconsideration on March 28, 2019. (*Id.* at 24.) Plaintiff subsequently requested a hearing that was held

telephonically on September 10, 2020. (*Id.*) On October 14, 2020, the ALJ issued a decision finding Plaintiff not disabled. (*Id.* at 24–33.) The SSA Appeals Council denied Plaintiff's request for review on August 30, 2021, and adopted the ALJ's decision as the SSA's final decision. (*Id.* at 1–6.) Following this unfavorable decision, Plaintiff filed the present appeal. (Doc. 1.)

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the

claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C. The ALJ's Application of the Factors

At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (Doc. 13-3 at 27.)

At the second step, the ALJ determined that Plaintiff's multiple sclerosis, peripheral neuropathy, inflammatory bowel disease, BRCA 1 positive, and vestibular system disorder constituted severe impairments under 20 C.F.R. § 404.1520(c). (*Id.*) The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 27–29.)

At the third step, the ALJ determined that neither Plaintiff's impairments nor a combination of Plaintiff's impairments met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 29.) After evaluating the record, the ALJ determined Plaintiff's RFC:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b), with the following additional limitations: never climbing ladders, ropes or scaffolds; occasional balancing; occasional exposure to extreme heat and extreme cold; occasional exposure to unprotected heights and moving

mechanical parts; and can be exposed to moderate noise. (*Id.*)

At the fourth step, the ALJ concluded that Plaintiff is able to perform past relevant work as a phlebotomist because "[t]his work does not require the performance of work-related activities precluded by [her] [RFC]." (*Id.* at 33.) The ALJ reached this conclusion based on the testimony of a vocational expert ("VE") who testified that Plaintiff "could meet the demands of the phlebotomist work." (*Id.*) The VE's testimony was elicited through hypotheticals asked by the ALJ and based on Plaintiff's RFC. (*Id.*) Accordingly, the ALJ did not proceed to step five of the evaluation and found that Plaintiff was not disabled from the alleged onset date through October 14, 2020. (*Id.*)

## II.     LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

**III. DICUSSION**

Plaintiff raises three issues on appeal: (1) the ALJ discrediting Plaintiff's symptom testimony was error; (2) regarding Plaintiff's physical symptoms, the ALJ improperly weighed the persuasive value of the nonexamining state agency physicians' medical opinions; and (3) the Court should remand for an award of benefits or a new hearing. (Doc. 14 at 15–25.)

**A. Allen's Symptom Testimony**

Plaintiff argues that the ALJ rejected Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons. (Doc. 14 at 15–23.) Specifically, Plaintiff argues that the ALJ improperly considered the evidence in the record and did not sufficiently explain why he discredited Plaintiff's symptom testimony. (*Id.*) The Commissioner argues that "[s]ubstantial evidence supports the ALJ's evaluation of Plaintiff's alleged symptoms." (Doc. 17 at 4; *id.* at 4–9.)

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

"Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the

claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc) and *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). An ALJ's credibility determination "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between her testimony and her own conduct, or on internal contradictions in that testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In analyzing whether to discount a claimant's testimony, "[t]he ALJ must identify the testimony that was not credible and specify 'what evidence undermines the claimant's complaints.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ's findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467 (Oct. 25, 2017). If the ALJ's path cannot "reasonably be discerned," the ALJ's decision must be reversed. *Treichler*, 775 F.3d at 1103.

While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged symptoms, *see Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001); *Fair*, 885 F.2d at 602, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Factors that the adjudicator may consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities. *Bunnell*, 947 F.2d at 346 (citing SSR 88–13, 1988 WL 236011 (July 20, 1988)).

Plaintiff testified that she suffers from "fatigue, depression, nerve pain, muscle pain,

tremor from MS, arthritis, and worsening cognition and focus. She [also] stated [that] she could lift 8 pounds; walk 5 minutes before needing to sit down; sit for 20-30 minutes before changing position; [] does a few dishes at a time; [and that] some days are better than others." (Doc. 13-3 at 30, 47.) At the first step, "[a]fter careful consideration of the evidence," the ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) But, at the second step, the ALJ determined that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Regarding the medical evidence in the record, the ALJ found:

> The medical evidence of record reveals treatment for complaints of right-sided weakness, sensitivity of the right side of the face, and other neurologic problems. She was diagnosed with trigeminal neuralgia in 2017. In January 2018, MRI of the brain showed a T2/FLAIR increased hyperintense signal in the central pons without mass effect or enhancement (37F/18). Cervical spine MRI revealed a new T2 hyperintense lesion with patchy enhancement at C6-C7 vertebral body level, compatible with multiple sclerosis active demyelinating lesion (37F/21).
>
> In February 2018, lumbar puncture revealed findings consistent with multiple sclerosis. In April 2018, MRI revealed stable nonspecific nonenhancing T2 hyperintensity in the spinal cord at C7. The claimant was started on Ocrevus infusions in April 2018, with benefit.
>
> The claimant was also treated for complaints of abdominal pain, which was diagnosed as gastroesophageal reflux disorder (GERD) in October 2016 (1F/3). Colonoscopy was entirely normal in November 2016 (12F/12). In January 2018, abdominal ultrasound revealed no acute abnormality, normal gallbladder, normal liver, and the prior increased liver echogenicity had resolved (37F/16). In January 2019, abdominal ultrasound revealed hepatic parenchyma diffusely low in attenuation likely fatty replaced (20F/20).

In October 2018, MRI of the brain revealed unchanged brainstem and posterior fossa FLAIR hyperintense signal that was nonspecific but would be compatible with the history of multiple sclerosis; there were no new lesions, and no parenchymal enhancement to suggest active demyelination (18F/22).

The claimant presented to the emergency room in May 2018 for abdominal pain, which was diagnosed as an ovarian cyst (12F/44, 47). She was previously diagnosed as BRCA 1 positive, which gave her an increased risk of developing a triple negative breast cancer and an increased risk of both a secondary breast cancer and ovarian cancer (12F/103). On November 26, 2019, the claimant underwent examination under anesthesia, robotic assisted laparoscopy, total hysterectomy, right salpingo-oophorectomy, and cystoscopy (36F, 37F).

The objective medical evidence and the claimant's treatment history are not entirely consistent with her allegations of the severity of her functional limitations. Although the claimant has received treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. The claimant reportedly improved with medications and other conservative treatment provided by her physicians (see, e.g., 13F; 24F/2, 3, 8; 25F/4; 28F/2; 39F/2).

The claimant alleges debilitating physical and mental problems since November 2017, but the objective evidence does not support her assertion. Cervical spine x-rays revealed straightening of lordosis, but were otherwise negative (37F/10). Lumbar spine MRI revealed L4-L5 and L5-S1 mild disc protrusions. MRI of the brain revealed mild volume loss but was otherwise negative (37F/11). Physical examinations revealed hypesthesia on the right side of the body and subtle weakness on the right side, but many examinations revealed few remarkable findings otherwise (see, e.g., 35F/17).

The claimant testified to using an assistive device, but the record is inconsistent. In 2018, there are several notes that she was dragging her right leg while walking (8F/14, 17; 9F/25,

> 27). This does not appear to have lasted, as the later walking tests did not reflect this (8F/4, 8; 9F/17, 33, 84; 12F/93; 15F/6, 10, 13; 18F/8, 13, 20; 26F/88; 35F/17; 41F/13). In February 2019, a functional gait assessment showed normal gait (21F/5). In April 2019, she performed in the normal range with no assistive device (25F/5-6). She reported that she was 'doing much better' with very little dizziness. This was part of a test - she started at 14/30 and improved to 25/30, with a goal of 26/30. Most of the results were normal to mild limitations.
>
> In November 2019, the claimant was reportedly disabled, able to ambulate short distances with a cane or front wheel walker, and able to stand for 10 minutes (40F/607). However, this appears to be short term as it was only a few days after her gynecological surgery on November 26, 2019, and physical examination was within normal limits (37F).
>
> The claimant asserted her hands are bad, with nerve pain and arthritis, and she drops things because of pain and numbness in the hands. However, the objective evidence is not entirely consistent with this assertion. Treatment notes document some instances where her grip strength was not intact (37F/39), but most examinations generally revealed normal (5/5) grip strength in both hands (9F/16; 26F/88; 35F/60).

(*Id.* at 30–32.[1])

The Court finds that the ALJ's conclusion is adequately supported by the record. (*Id.*) The record contains a plethora of evidence indicating that Plaintiff is able to work: Plaintiff's symptoms improved markedly with medication and other conservative treatment; x-rays and MRIs yielded mostly normal results; beyond a diagnosis of hypesthesia, her physical examinations were unremarkable; her use of an assistive device for walking was inconsistent; and most examinations noted her grip strength was normal in both hands. (*Id.* at 30–32.)

The Court also finds that the evidence that the ALJ highlighted provides specific, clear, and convincing reasons for discounting Plaintiff's testimony. As noted earlier,

---

[1] In order to show the depth of the ALJ's extensive record cites in this portion of the ALJ's decision, the Court has not omitted internal citations.

- 9 -

Plaintiff offered statements that she suffers from a number of disabilities that prevent her from working. (Doc. 13-3 at 30); *supra* Section III.A. But the ALJ observed, and the Court agrees, that much of the evidence in the record contradicts Plaintiff's assertions. The ALJ properly highlighted that much of the evidence in the record regarding Plaintiff's grip strength and her x-ray, MRI, and physical examination results point to limitations no less severe than those articulated in the RFC. (*See id.* at 31–32 (citing Doc. 13-9 at 438; Doc. 13-16 at 1405; Doc. 13-19 at 1818, 1861; Doc. 13-20 at 1955–56, 1984).) Similarly, the ALJ noted a plethora of evidence regarding Plaintiff's ability to walk without the use of an assistive device that supports his RFC determination. (*See* Doc. 13-3 at 31 (citing extensively from the record when discrediting Plaintiff's symptom testimony).) Additionally, the ALJ properly highlighted Plaintiff's conservative treatment regimen. (*Id.* at 31.) For example, the use of medications has improved her symptoms. (*Id.* (citing many examples of Plaintiff's conservative treatment regimen); *see, e.g.*, Doc. 13-12 at 905.) The Ninth Circuit has noted that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

When discrediting Plaintiff's symptom testimony, the ALJ's decision concluded that Plaintiff's symptom testimony conflicted with her daily living activities; this was error as the ALJ's decision never discussed which specific activities conflicted with her testimony. (Doc. 13-3 at 30–33.) But this error was harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). As noted above, the ALJ provided many other reasons for discrediting Plaintiff's symptom testimony. Those other reasons provide substantial evidence that supports the ALJ's evaluation of Plaintiff's alleged symptoms. Thus, if the ALJ had not mentioned Plaintiff's daily living activities as a reason for discrediting her symptom testimony, it would still have been reasonable for the ALJ to discredit Plaintiff's symptom testimony. Therefore, the ALJ's error was harmless. *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1056 (9th Cir. 2006))); *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (recognizing harmless error where "two of the ALJ's [four] reasons supporting his adverse credibility finding [were] invalid.").

Because a substantial portion of the record conflicts with Plaintiff's symptom testimony, the Court finds that the ALJ did not err in determining that Plaintiff's symptom testimony was generally not consistent with the record. Moreover, these findings are factual determinations solely within the ALJ's responsibility and not for this Court to second guess. *Andrews*, 53 F.3d at 1039. Based on the foregoing, the Court finds that the ALJ provided specific, clear, and convincing reasons to discount Plaintiff's symptom testimony that were supported by substantial evidence in the record.

**B.     Medical Opinion Evidence**

Plaintiff argues that the ALJ erred "by purporting to rely on the opinions from nonexamining state agency physicians who reviewed a limited portion of the record and never examined Allen." (Doc. 14 at 23–25.) Specifically, Plaintiff asserts that (1) it was error for the ALJ to rely on the medical opinions of J. Zuess, M.D., and T. Dupont, M.D., who had never seen Plaintiff and whose opinions did not consider the entire record; (2) the evidence provided supports Plaintiff's symptom testimony; and (3) the ALJ's decision lacked an appropriate amount of explanation when determining the persuasive value of the medical opinions.[2] (*Id.* at 23–24.) The Commissioner argues that the ALJ's analysis of the prior administrative medical findings ("PAMFs") is supported by substantial evidence. (Doc. 17 at 9–12.)

Having reviewed the record, the ALJ determined the persuasive value of Dr. Zuess'

---

[2] The Court notes that the ALJ's decision also mentions two State agency psychological consultants and their evaluation of Plaintiff's level of mental impairment. (Doc. 13-3 at 32.) Plaintiff's Opening Brief (Doc. 14) is ambiguous; it is not immediately clear whether Plaintiff is also challenging the ALJ's determination regarding the persuasive value of the State agency psychological consultants' reports. (*Id.* at 23–25.) Plaintiff's Reply Brief (Doc. 18) makes no attempt the clarify this ambiguity. (*Id.*) A close reading of Plaintiff's Opening Brief reveals that Plaintiff has only challenged the persuasive value that the ALJ assigned Dr. Zuess' and Dr. Dupont's medical opinions. (*See* Doc. 14 at 24 (challenging the medical opinions "that addressed [Plaintiff's] physical capacities" and only quoting from the portion of the ALJ's decision that addresses Dr. Zuess' and Dr. Dupont's medical opinions).)

and Dr. Dupont's medical opinions in this case:

> When State agency medical consultants J. Zuess, M.D., and T. Dupont, M.D., reviewed the record, they found the claimant limited to light work: lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit more than 6 hours in an 8-hour workday; never climb ladders/ropes/scaffolds; occasionally balance; and avoid concentrated exposure to extreme cold/heat, noise, and hazards. These limitations are persuasive. The doctors supported their assessments with a detailed analysis of the evidence of record.
>
> . . .
>
> In sum, the above residual functional capacity assessment is supported by . . . the prior administrative medical findings from Dr. Zuess and Dr. Dupont . . . .

(Doc. 15-3 at 32–33 (internal citations omitted).)

The law previously distinguished between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). "In March of 2017, [t]he Social Security Administration amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Furthermore, the ALJ will consider all medical opinions according to several

enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. Under the new regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, but is not required to, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3).

"When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Although it was debated for years, recently, the Ninth Circuit definitively ruled that the "specific and legitimate" standard is not the law in Social Security cases where the revised regulations apply. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Specifically, the Ninth Circuit in *Woods* determined that

> [t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with [Plaintiff]. Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Thus, an ALJ need not give specific and legitimate reasons for not crediting the medical opinion of a treating physician. *Id.* at 791.

Substantial evidence supports the persuasive weight that the ALJ assigned Dr.

Zuess' and Dr. Dupont's medical opinion. (Doc. 13-3 at 32–33); *see Trevizo*, 871 F.3d at 675 ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Using the standard set forth at 20 C.F.R. § 404.1520c, the ALJ determined that Dr. Zuess and Dr. Dupont supported their medical opinions "with a detailed analysis of the evidence of record." (Doc. 13-3 at 32.) Thus, the ALJ discussed the supportability of these opinions. It follows that the ALJ's decision also explains that both doctors' medical opinions are consistent with the record. (*Id.*) The Court finds that a reasonable person examining the evidence could draw the same conclusions. The fact that the evidence in the record could be interpreted differently has no effect on this Court's ruling. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). Thus, the ALJ considering Dr. Zuess' and Dr. Dupont's medical opinions persuasive was not error.

Alternatively, the Court finds that, if the ALJ erred by not explicitly articulating that Dr. Zuess' and Dr. Dupont's medical opinions were consistent with the record, such error was harmless. *See Marsh*, 792 F.3d at 1172. Determining that the doctors' opinions are persuasive in large part because they are supported by the record and simultaneously concluding that the doctors' opinions were not consistent with the record would be factually impossible. The ALJ found that the record supported the medical opinions. Thus, it follows that, if the ALJ had felt it necessary to explicitly articulate the doctors' opinions' consistency with the record, then the ALJ would have found them consistent with the record. Thus, requiring an explicit finding via the use of "magic language" would have had no effect on the final RFC determination. Therefore, if the ALJ erred, it was harmless. *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout*, 454 F.3d at

1056)).

C. **Further Proceedings**

Finally, Plaintiff requests a remand for further proceedings or a calculation of benefits pursuant to the credit-as-true rule. (Doc. 14 at 25; Doc. 18 at 9–11.) But the Court is affirming the ALJ's decision; therefore, the Court denies Plaintiff's request for a remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct award of benefits is proper "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 4th day of August, 2022.

James A. Teilborg
Senior United States District Judge